UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN PARKS TROWBRIDGE, JR., ) | |
| ) | |
| Plaintiff, ) | Case: 1:16–cv–00506      D-Deck |
| v.                                        ) | Assigned To : Howell, Beryl A. |
| ) | Assign. Date : 3/16/2016 |
| UNITED STATES OF AMERICA, ) | Description: TRO/PI |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE
WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Civil Rule

65.1(a), Plaintiff John Parks Trowbridge, Jr. hereby applies to this Court for a temporary

restraining order ("TRO"). In support of this motion, Plaintiff states as follows:

1.       Plaintiff brings this action to restrain Defendant United States of America from

using any 28 U.S.C. § 3002(8) judgment obtained from a United States District Court purporting

to possess and exercise territorial jurisdiction in Tyler County, Texas, to enforce its liens against

and foreclose upon and sell Plaintiff's real property in Tyler County, Texas, until such time as

this Court issues a judgment declaring (a) whether the territorial jurisdiction of United States

District Courts is co-extensive with the territorial legislative power of Congress or extends to

Tyler County, Texas, and (b) Plaintiff's right to the Real Property in respect thereof.

2.       Plaintiff demanded six months ago that Defendant disclose the constitutional

authority that gives the United States District Court of first instance the capacity to take

jurisdiction and enter a 28 U.S.C. § 3002(8) judgment in Tyler County, Texas, but Defendant

failed to respond to said demand, thereafter likewise failed to oppose Plaintiff's motion to

dismiss with prejudice, and never addressed the subject matter of either aforesaid filing.

3.      Defendant now has obtained from the United States District Court of first instance, two 28 U.S.C. § 3002(8) judgments, specifically a memorandum order and a final judgment, both entered on March 3, 2016, and threatens to use either or both to enforce its liens against and foreclose upon and sell Plaintiff's aforesaid real property as soon as March 18, 2016.

3.      Plaintiff therefore, to preserve the status quo, seeks an order:

a.      Temporarily restraining and enjoining, for 14 days, Defendant from using either the aforesaid memorandum order or final judgment as authority to enforce its liens against and foreclose upon and sell Plaintiff's real property in Tyler County, Texas; and

b.      Requiring Defendant to show cause why this Court should not issue a preliminary injunction extending such temporary relief, and thereafter a permanent injunction, pending this Court's resolution of said controversy re extent of territorial jurisdiction, and judgment declaring Plaintiff's right to property in Tyler County, Texas.

4.      Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Civil Rule 65.l(a)(l): Plaintiff has provided actual notice to Defendant concurrent with the making of this application, and a copy of all pleadings and papers filed in this action to date; and a certificate pursuant to Local Civil Rule 65.1(a)(l) accompanies this motion.

5.      A memorandum in support of TRO and proposed TRO are filed concurrently.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion by entering the proposed TRO.

Date:   March 14, 2016                          Respectfully submitted,

John Parks Trowbridge, Jr.
9816 Memorial Boulevard #205
Humble, Texas
(832) 472-3683

2

## CERTIFICATE OF NOTICE

Pursuant to Local Civil Rule 65.1(a) as to actual notice to defendant United States of America ("Defendant") of the time of making the appended application for temporary restraining order, the undersigned, John Parks Trowbridge, Jr. ("Trowbridge") hereby certifies that Trowbridge on March 14, 2016, furnished Defendant with the same by telephonic conversation; and as to a copy of all pleadings and papers to be filed in this action, by Federal Express for delivery Tuesday morning, March 15, 2016.

Upon making the application March 15, 2016, Trowbridge shall cause to be served on Defendant immediately thereafter the summons and a copy of all pleadings and papers filed in this action as of that time, and thereupon cause to be filed in the Court on the same day a return of service.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 14th day of March 2016.

John Parks Trowbridge, Jr.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JOHN PARKS TROWBRIDGE, JR.,          )
                                     )
                    Plaintiff,       )          CIVIL NO. _____
          v.                         )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
                    Defendant.       )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

# TABLE OF CONTENTS

Page/s

I.      INTRODUCTION.................................................................................1

II.     GENERAL JURISDICTION ...........................................................…..... 2

III.    FACTS..............................................................................................3

IV.     A TEMPORARY RESTRAINING ORDER SHOULD ISSUE
        AGAINST DEFENDANT...................................................................... 7

        A.   This Court Has The Authority To Grant The Requested Relief …......... 8

        B.   Defendant Cannot Prove Territorial Jurisdiction Over Plaintiff's
             Real Property In Tyler County, Texas ...........................................8

        C.   Plaintiff Is Likely To Obtain A Favorable Declaratory Judgment.......... 8

        D.   The Equities Weigh In Favor Of Granting Injunctive Relief................ 9

V.      THE SCOPE OF THE PROPOSED TRO IS NECESSARY AND APPROPRIATE .... 10

VI.     CONCLUSION ...........................................................................…... 10

CERTIFICATE OF NOTICE........................................................…............ 11

# TABLE OF AUTHORITIES

**Cases:**

*Caha v. United States,*
        152 U.S. 211, 215 (1894 ..............................................…...6, 7

*Cary v. Curtis,*
        3 How. 236, 245, 11 L.Ed. 576 (1845)..................................…..4

*Case of the Sewing Machine Companies,*
        18 Wall. 553, 577-578, 586-587, 21 L.Ed. 914 (1874) ................…...4

*Christianson v. Colt Industries Operating Co.,*
        486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988).................4

*Cohens v. Virginia,*
        6 Wheat. Rep. 384, 414...................................................…..4

*Finley v. United States,*
        490 U.S.545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)...............................…..4

*Firestone Tire & Rubber Co. v. Risjord,*
        449 U.S. 368, 379-380, 101 S.Ct. 669, 676-677, 66 L.Ed.2d 571 (1981) ..........4

*Hurtado v. California,*
        110 U.S. 516, 3 Sup. Ct. 111, 292, 28 L. Ed. 232 (1884)............................1

*Kline v. Burke Construction Co.,*
        260 U.S. 226, 233-234, 43 S.Ct. 79, 82-83, 67 L.Ed. 226 (1922)..................4

*Mapp v. Ohio,*
        367 U.S. 643, 659 (1961)..........................................................9

*McIntire v. Wood,*
        7 Cranch 504, 506, 3 L.Ed. 420 (1813)...............................................4

**Cases (continued):**

Page/s

*Osborn* v. *Bank of the United States*,
   22 U.S. 738, 808 (1824)…..……………………………………………4

*Pennoyer v. Neff*,
   95 U.S. 714, 722 (1878)…..……………………………….…......6, 7

*Sheldon v. Sill*,
   8 How. 441, 449, 12 L.Ed. 1147 (1850)……………………………4

*Shoshone Mining Co. v. Rutter*,
   177 U.S. 505, 513 (1900)………………………………………....3

*Slaughterhouse Cases*,
   83 U.S. (16 Wall.) 36, 116 (1872) ……………………………….....1

*The Mayor v. Cooper*,
   73 U.S. (6 Wall.) 247, 252, 18 L.Ed. (1867)…………………….....4, 5

*United States v. Bevans*,
   16 U.S. (3 Wheat.) 336, 350 (1818)………………………………6, 7

**Statutes:**

26 U.S.C.:
   § 7402……………………………………………………………3
   § 7403……………………………………………………………3

28 U.S.C.:
   § 88 …………………………………………………………….....8
   § 1340……………………………………………………………3
   § 1345……………………………………………………………3
   § 1391(e)(1)(A)…………………………………………………8
   § 2201 …………………………………………………………1
   § 3002(8) ……………………………………………….1, 2, 3, 7

**Rules and Regulations:**

Fed. R. Civ. P.:
   65(b)…..……………………………………………………….8
   65(c)…..……………………………………………………….8

**Miscellaneous:**

*Black's Law Dictionary*, Seventh Edition, Bryan A. Garner, Editor in Chief,
   (West Group: St. Paul, Minn., 1999), p. 856 ……………………………2
Constitution of the United States……………………………….. 1, 2, 4, 5, 6, 7
   Article 1 § 8(17)………………………………………..…………5, 6
   Article 4 § 3(2)……………………………………………...………5, 6

**Miscellaneous (continued):**

Page/s

Constitution of the United States (continued)

Fifth Article of Amendment……………………………………………..…1

John Bouvier, *Bouvier's Law Dictionary*, Third Revision (Being the Eighth
Edition), revised by Francis Rawle (West Publishing
Co.: St. Paul, Minn., 1914)..………………………………………….…2, 8, 10

The Federalist, No. 80………………………………………………………4

*The unanimous Declaration of the thirteen united States of America* of July 4, 1776 ……1

Preamble……………………………………………………………..…1

William Rawle, *A View of the Constitution of the United States of America*
(Philip H. Nicklin, Law Bookseller: Philadelphia, 1829), p. 124 ………………2

# I. **INTRODUCTION**

John Parks Trowbridge, Jr. (the "Plaintiff" or Trowbridge") brings this action in respect

of Plaintiff's "unalienable Rights" (*The unanimous Declaration of the thirteen united States of*

*America* of July 4, 1776, Preamble) of "Life, Liberty, and the pursuit of Happiness" (*id.*), i.e.,

life, liberty, and property,[1] and the Fifth Article of Amendment to that certain constitution

ordained, established, and implemented March 4, 1789, Independence Hall, Philadelphia,

Pennsylvania (the "Constitution"), to avert being deprived of Plaintiff's property without due

process of law, i.e., process according to the law of the land,[2] the Constitution.

Defendant United States of America (the "Defendant" or "United States") threatens to

use, as soon as March 18, 2016, either or both of two 28 U.S.C. § 3002(8) judgments obtained

from a United States District Court purporting to exercise territorial jurisdiction in Tyler County,

Texas—specifically, the court in United States District Court for the Eastern District of Texas,

Lufkin Division Civil Action No. 9:14-cv-0138— to enforce its liens against and foreclose upon

and sell Plaintiff's real property in Tyler County, Texas.

A temporary restraining order ("TRO") is necessary to prevent an injustice and

irreparable harm to Plaintiff by way of deprivation of Plaintiff's real property in Tyler County,

Texas, without due process of law.  A TRO would restrain United States from enforcing its liens

against and foreclosing upon and selling said real property until the Court can settle the instant

controversy, 28 U.S.C. § 2201, and declare Plaintiff's rights in respect thereof.

---

[1] Rights to life, liberty, and the pursuit of happiness are equivalent to the rights of life, liberty, and property. . . . *Slaughterhouse Cases*, 83 U.S. (16 Wall.) 36, 116 (1872).

[2] Due process of law is process according to the law of the land. . . .

. . . Due process of law in the latter [the Fifth Article of Amendment to the Constitution] refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein prescribed and interpreted according to the principles of the common law. . . . Mr. Justice Matthews, delivering the opinion of the court in *Hurtado v. California*, 110 U.S. 516, 3 Sup. Ct. 111, 292, 28 L. Ed. 232 (1884).

## II. GENERAL JURISDICTION

The judicial power of any court, i.e., its jurisdiction, is either general or limited; to wit:

> The judicial power is general or limited, according to the scope and objects of the government. . . . William Rawle, *A View of the Constitution of the United States of America* (Philip H. Nicklin, Law Bookseller: Philadelphia, 1829), p. 124.

General jurisdiction and limited jurisdiction are defined, in pertinent part, as follows:

> *general jurisdiction.* . . . A court's authority to hear a wide range of cases, civil or criminal, that arise within its geographic area. *Black's Law Dictionary*, Seventh Edition, Bryan A. Garner, Editor in Chief (West Group: St. Paul, Minn., 1999), p. 856.
>
> *General jurisdiction* is that which extends to a great variety of matters. General jurisdiction in law and equity is jurisdiction of every kind that a court can possess, of the person, subject-matter, territorial, and generally the power of the court in the discharge of its judicial duties. . . .
> . . . *Limited jurisdiction* (called, also, special and inferior) is that which extends only to certain specified causes.  John Bouvier, *Bouvier's Law Dictionary*, Third Revision (Being the Eighth Edition), revised by Francis Rawle (West Publishing Co.: St. Paul, Minn., 1914) (hereinafter "BOUVIER's"), p. 1761.

A court of general jurisdiction has authority to hear civil and criminal causes and exercise territorial, personal, and subject-matter jurisdiction.

Title 28 U.S.C. § 3002 provides, in pertinent part:

> As used in this chapter:
> . . . (8) 'Judgment' means a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt.

Every United States District Court hears a wide range of cases, civil or criminal; exercises territorial, personal, and subject-matter jurisdiction; and enters 28 U.S.C. § 3002(8) judgments in respect thereof.

Every United States District Court is a court of general jurisdiction.

The court in United States District Court for the Eastern District of Texas, Lufkin Division Civil Action No. 9:14-cv-0138 (the "Lufkin Court") is a court of general jurisdiction.

## III. <u>FACTS</u>

The Lufkin Court on March 3, 2016, entered two 28 U.S.C. § 3002(8) judgments; to wit:

- Memorandum Order Overruling Defendant's Objections and Adopting the Magistrate Judge's Report and Recommendation, Dkt. #66 (shown as Document, attached as Exhibit A (the "Memorandum Order"); and

- Final Judgment, Dkt. #67, attached as Exhibit B (the "Final Judgment").

The Memorandum Order and Final Judgment purport to authorize United States to enforce its federal tax liens and foreclose upon and sell Plaintiff's real property in Tyler County, Texas.

The Memorandum Order and Final Judgment evince that the Lufkin Court purports to exercise territorial jurisdiction over Plaintiff's real property in Tyler County, Texas.

United States, on page 1 of its complaint (Dkt. #1) filed in United States District Court for the Eastern District of Texas, Lufkin Division Civil Action No. 9:14-cv-0138 (the "Lufkin Civil Action"), claims "This court has jurisdiction over this action pursuant to 26 U.S.C. §§ 7402 and 7403 and [*sic*] 28 U.S.C. §§ 1340 and 1345."

That an act of Congress authorizes the Lufkin Civil Action is not in question.

Statutory authority to hear and determine causes, however, is not in and of itself sufficient to vest jurisdiction in the Lufkin Court; to wit:

> So, we conclude, as we did in the prior case, that, although these suits may sometimes so present questions arising under the Constitution or laws of the United States that the Federal courts will have jurisdiction, yet the mere fact that a suit is an adverse suit authorized by the statutes of Congress is not in and of itself sufficient to vest jurisdiction in the Federal courts. *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 513 (1900).

Hornbook law provides that no court of the United States, such as the Lufkin Court, can take jurisdiction unless the capacity to do so is given by the Constitution; to wit:

3

As regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. Their concurrence is necessary to vest it. It is the duty of Congress to act for that purpose up to the limits of the granted power. They may fall short of it, but cannot exceed it. To the extent that such action is not taken, the power lies dormant. It can be brought into activity in no other way. . . . *The Mayor v. Cooper*, 73 U.S. (6 Wall.) 247, 252, 18 L.Ed. (1867). [*See also Christianson v. Colt Industries Operating Co.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379-380, 101 S.Ct. 669, 676-677, 66 L.Ed.2d 571 (1981); *Kline v. Burke Construction Co.,* 260 U.S. 226, 233-234, 43 S.Ct. 79, 82-83, 67 L.Ed. 226 (1922); *Case of the Sewing Machine Companies,* 18 Wall. 553, 577-578, 586-587, 21 L.Ed. 914 (1874); *Sheldon v. Sill,* 8 How. 441, 449, 12 L.Ed. 1147 (1850); *Cary v. Curtis,* 3 How. 236, 245, 11 L.Ed. 576 (1845); *McIntire v. Wood,* 7 Cranch 504, 506, 3 L.Ed. 420 (1813), and *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)]

The Lufkin Court is a United States District Court of general jurisdiction—i.e., territorial, personal, and subject-matter jurisdiction—authorized by statute to enter a judgment, order, or decree in favor of the United States arising from a civil or criminal proceeding regarding a debt.

The geographic area in which the Constitution gives United States District Courts the capacity to take <u>territorial jurisdiction</u> is the selfsame geographic area in which the Constitution confers upon Congress power of <u>territorial legislation</u>; to wit:

Those who framed the constitution, intended to establish a government complete for its own purposes, supreme within its sphere, and capable of acting by its own proper powers. They intended it to consist of three co-ordinate branches, legislative, executive, and judicial. In the construction of such a government, it is an obvious maxim, 'that the judicial power should be competent to give efficacy to the constitutional laws of the Legislature.'[3] The judicial authority, therefore, must be co-extensive with the legislative power.[4] . . .
. . . [22 U.S. 738, 818] [T]he legislative, executive, and judicial powers, of every well constructed government, are co-extensive with each other . . . The executive department may constitutionally execute every law which the Legislature may constitutionally make, and the judicial department may receive from the Legislature the power of construing every such law. . . . *Osborn v. Bank of the United States*, 22 U.S. 738, 808 (1824).

---

[3] *Cohens v. Virginia*, 6 Wheat. Rep. 414.
[4] The Federalist, No. 80, *Cohens v. Virginia*, 6 Wheat. Rep. 384.

If a Government court possess territorial jurisdiction, it is certain two things are coincident: (1) The Constitution must have given said court the capacity to take territorial jurisdiction, and (2) an act of Congress must have supplied it, *The Mayor, supra*, p. 5.

As shown *supra*, the Lufkin Court purports to possess the capacity, as given by the Constitution, to take territorial jurisdiction over Plaintiff's aforementioned real property.

The question, then, is: *Does the geographic area in which the Constitution confers upon Congress power of territorial legislation, comprehend Tyler County, Texas?*

The Constitution confers upon Congress power of territorial legislation (an aspect of exclusive legislation) only at Articles 1 § 8(17) and 4 § 3(2).

The full extent of the geographic area described in and comprehended by Articles 1 § 8(17) and 4 § 3(2) of the Constitution comprises "Territory or other Property belonging to the United States," *id.*, i.e. Federal territory.

The geographic area occupied by the body politic of Tyler County, Texas, wherein Plaintiff's real property is located, is situate without "Territory or other Property belonging to the United States," *id.*

For the Lufkin Court to grant United States' motion for summary judgment and authorize United States to enforce its federal tax liens against and foreclose upon and sell the real property that is the object of the complaint in the Lufkin Civil Action, the Lufkin Court had to extend its territorial jurisdiction beyond the boundaries fixed by the Constitution at Articles 1 § 8(17) and 4 § 3(2), into geographic area occupied by one of the several commonwealths united by and under authority of the Constitution and admitted into the Union: Texas.

Whereas, Tyler County, Texas, is situate without Federal territory, it appears United States has applied to the wrong forum to enforce its liens against the aforesaid real property.

5

The above observation is supported in *Pennoyer v. Neff*, 95 U.S. 714, 722 (1878), where the Supreme Court of the United States expounds the principle and effectively declares that, in respect of Trowbridge and Trowbridge's real property in Tyler County, Texas, Texas possesses <u>exclusive</u> jurisdiction and sovereignty; to wit:

> The several States of the Union are not, it is true, in every respect independent, many of the right [*sic*] and powers which originally belonged to them being now vested in the government created by the Constitution. But, except as restrained and limited by that instrument, they possess and exercise the authority of independent States, and the principles of public law to which we have referred are applicable to them. One of these principles is that every State [of the Union] possesses exclusive jurisdiction and sovereignty over persons and property within its territory. . . .

Sixty years prior to *Pennoyer*, in *United States v. Bevans*, 16 U.S. (3 Wheat.) 336, 350 (1818), the Supreme Court effectively declares that as to Massachusetts, its territorial jurisdiction is co-extensive with its territory and legislative power; to wit:

> The exclusive jurisdiction which the United States have in forts and dock-yards ceded to them, is derived from the express assent [16 U.S. 336, 351] of the states by whom the cessions are made. It could be derived in no other manner; because without it, the authority of the state would be supreme and exclusive therein. . . .
> . . . [16 U.S. 336, 386] What then is the extent of jurisdiction which a state possesses?
> We answer, without hesitation, the jurisdiction of [16 U.S. 336, 387] a state is co-extensive with its territory; co-extensive with its legislative power.

Congress have no power of territorial legislation anywhere in the Union; to wit:

> The laws of congress in respect to those matters [<u>preservation of the peace and the protection of person and property</u>] do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government [*sic*]. *Caha v. United States*, 152 U.S. 211, 215 (1894).

There being no provision of the Constitution that confers upon Congress power of territorial legislation without Federal territory, it is not possible that that instrument gives to any Government court, such as the Lufkin Court, the capacity to take territorial jurisdiction in Tyler County, Texas.

6

*Pennoyer*, *Bevans*, and *Caha* explain why, when Trowbridge on September 14, 2015, made demand of United States for disclosure of the constitutional authority that gives the Lufkin Court the capacity to take jurisdiction and enter a judgment, order, or decree in favor of the United States arising from a civil or criminal proceeding regarding a debt, in Tyler County, Texas, Dkt. #58, attached as Exhibit C—i.e., a 28 U.S.C. § 3002(8) judgment—United States went silent and remained so through to the end of the Lufkin Civil Action, 171 days later.

The above three cases also explain why United States failed to oppose Trowbridge's September 30, 2015, demand for dismissal with prejudice, Dkt. #59, attached as Exhibit D, alleging the Lufkin Court's lack of capacity, as given by the Constitution, to take territorial and personal jurisdiction and enter a judgment, order, or decree in favor of the United States arising from a civil or criminal proceeding regarding a debt, in Tyler County, Texas.

The Lufkin Court is bereft of capacity, as given by the Constitution, to take territorial jurisdiction over any property in Tyler County, Texas.

Whereas, there is no attempted affirmative showing in the record of the Lufkin Court's territorial jurisdiction in Tyler County, Texas, it is not known how the inference was drawn that the Lufkin Court has the capacity, as given by the Constitution, to take such jurisdiction.

## IV. A TEMPORARY RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANT

To prevent an injustice and irreparable harm to Plaintiff that could ensue anytime after March 17, 2016, the Court should issue a TRO enjoining Defendant from using the Memorandum Order or Final Judgment to enforce its federal tax liens against and foreclose upon and sell Plaintiff's real property in Tyler County, Texas, to give the Court the time to consider the matter and issue a judgment declaring whether the territorial jurisdiction of United States District Courts is co-extensive with the territorial legislative power of Congress or extends to

7

Tyler County, Texas, and Plaintiff's right to property in respect thereof; and, in the event such

judgment favors Plaintiff, ordering Defendant to show cause why a preliminary injunction

should not issue.

### A.     This Court Has The Authority To Grant The Requested Relief

This Court has personal jurisdiction over the Defendant, a resident of the District of

Columbia, and Fed. R. Civ. P. 65(b) and (c) authorize the Court to grant the requested relief.

Venue is proper pursuant to 28 U.S.C. §§ 88 and 1391(e)(1)(A).

### B.     Defendant Cannot Prove Territorial Jurisdiction Over Plaintiff's Real
###        Property In Tyler County, Texas

The reason United States went silent and waived opportunity to prove the Lufkin Court's

territorial jurisdiction upon challenge by Trowbridge (Exhibit C) is because it does not exist.[5]

United States failed to oppose the allegations in Trowbridge's September 30, 2015,

demand for dismissal with prejudice (Exhibit D) because the said allegations are true and

Trowbridge was entitled to dismissal with prejudice of the Lufkin Civil Action.[6]

### C.     Plaintiff Is Likely To Obtain A Favorable Declaratory Judgment

There is a substantial likelihood that Plaintiff will succeed in obtaining favorable

declaratory judgment because the within allegations are not speculative but factual and likely to

be affirmed by this Honorable Court upon mature deliberation.

---

[5] *Idem est non probari et non esse ; non deficit jus sed probatio.* What is not proved and what does not exist, are the same ; it is not the defect of the law, but of proof. BOUVIER'S, p. 2136.

*De non apparentibus et non existentibus eadem est ratio.* The law is the same respecting things which do not appear and things which do not exist. *Id.* at 2130.

[6] *Semper necessitas probandi incumbit et qui agit.* The claimant is always bound to prove (the burden of proof lies on him). *Id.* at 2162.

*Qui tacet consentire videtur ubi tractatur de ejus commodo.* A party who is silent is considered as assenting, when his advantage is debated. *Id.* at 2158.

*Actore non probante, reus absolvitur.* If the plaintiff does not prove his case, the defendant is absolved. *Id.* at *2124.*

*Omnia præsumuntur legitime facta donec probetur in contrarium.* All things are presumed to be done legitimately until the contrary is proved. *Id.* at 2152.

*Quod per recordum probatum, non debet esse negatum.* What is proved by the record, ought not to be denied. *Id.* at 2159

8

### D.    The Equities Weigh In Favor Of Granting Injunctive Relief

Once the controversy is settled in Plaintiff's favor and Plaintiff's right to property in

Tyler County, Texas, declared, preliminary and permanent injunctive relief is warranted if the

Court, weighing the equities, finds that such relief is in the public interest.

The public interest in preventing an injustice and upholding the right to property of an

ordinary American, i.e., Plaintiff, clearly outweighs the specter of a man knowingly and willfully

deprived of his property without due process of law.

The temporary, preliminary, and permanent relief sought here is in the public interest

because it enjoins Defendant from using simulated legal process to enrich itself at Plaintiff's

expense, and requires Defendant to observe the law of the land in Tyler County, Texas.

In contrast, the Government equities in this case are not compelling.  Observance of the

Constitution by those sworn to uphold it and compliance with the law is hardly an unreasonable

burden.  This is particularly true here, where Defendant's conduct indicates that, in the absence

of the requested relief, Defendant is likely to engage in what amounts to unlawful conduct.

The potential risk associated with condoning Defendant's use of simulated legal process

to skirt the laws, disregard the Constitution, and wield the Memorandum Order and Final

Judgment to deprive Plaintiff of his home without due process of law, far outweighs any

apparent advantage from the money that would be gained—especially in light of the fact that

Defendant sued in the wrong court and need only apply to the proper forum to prosecute its

claims—and harms and disserves the public interest by undermining respect for and confidence

in the Government; to wit:

> Nothing can destroy a government more quickly than its failure to observe its own
> laws, or worse, its disregard of the charter of its own existence. . . .  *Mapp v. Ohio*,
> 367 U.S. 643, 659 (1961).

9

The right path may not be the most appealing, but ultimately, being the right one, it is the only viable one; to wit: *"Fiat justitia ruat cœlum. Let justice be done, though the heaven should fall."* BOUVIER'S, p. 2134.

Because the proposed injunction would preclude only harmful, unlawful conduct against Plaintiff, the public equities supporting the injunctive relief outweigh any burden such relief could possibly impose on Defendant.

## V. THE SCOPE OF THE PROPOSED TRO IS NECESSARY AND APPROPRIATE

As the evidence has shown, Plaintiff is entitled to declaratory relief and the balance of equities strongly favors the public. Thus, preliminary injunctive relief, in the form of a TRO, is warranted. To ensure effective final relief, in the event of declaratory judgment favorable to Plaintiff, Plaintiff requests that the Court issue an order to show cause why an order preliminarily enjoining Defendant from using the Memorandum Order or Final Judgment as authority to enforce its liens against and foreclose upon and sell Plaintiff's real property in Tyler County, Texas, should not issue.

## VI. CONCLUSION

Defendant is likely to cause substantial injury to Plaintiff through the use of simulated legal process in the form of the Memorandum Order or Final Judgment. Thus, for the above reasons, and to preserve the *status quo*, Plaintiff respectfully requests that this Court issue the attached proposed TRO to protect Plaintiff from further injury.

Date:   March 14, 2016

Respectfully submitted,

John Parks Trowbridge, Jr.
9816 Memorial Boulevard #205
Humble, Texas
(832) 472-3683

10

## CERTIFICATE OF NOTICE

As to actual notice to defendant United States of America ("Defendant") of the time of making the appended application for temporary restraining order, Trowbridge hereby certifies that Trowbridge on March 14, 2016, furnished Defendant with the same by phone, and as to a copy of all pleadings and papers to be filed in this action, by FedEx overnight courtier for delivery Tuesday morning, March 15, 2016.

Upon making the application March 15, 2016, Trowbridge shall cause to be served on Defendant the summons and a copy of all pleadings and papers filed in this action as of that time, and thereafter cause to be filed in the Court on the same day a return of service.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 14th day of March 2016.

John Parks Trowbridge, Jr.

11